**CITY OF COLUMBUS, Appellee,**

v.

**NEARHOOD, Appellant.**

[Cite as *Columbus v. Nearhood,* 193 Ohio App.3d 178, 2011-Ohio-905.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 10AP–694.

Decided March 1, 2011.

Richard C. Pfeiffer Jr., Columbus City Attorney, Lara N. Baker, City Prosecuting Attorney, and Melanie R. Tobias, for appellee.

David H. Thomas, for appellant.

---

TYACK, Judge.

{¶ 1} Steven Nearhood is appealing from his conviction on the charges of assault and disorderly conduct. He assigns five errors for our consideration:

[I.] The trial court abused its discretion by dismissing for cause a deaf juror when an interpreter was available, thereby violating appellant's right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

[II.] The trial court improperly overruled appellant's motion to suppress his statements made to his parole officer, thereby violating his rights as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

[III.] The trial court improperly admitted hearsay statements of the alleged victim in violation of the rules of evidence and appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and comparable provisions of the Ohio constitution.

[IV.] The trial court violated appellant's right of confrontation as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution by improperly admitting hearsay statements of the alleged victim.

[V.] The trial court violated appellant's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I,

Section 10 of the Ohio Constitution by entering verdicts of guilty, as the jury's verdict was against the manifest weight of the evidence.

{¶ 2} Addressing the fifth assignment of error, Columbus police encountered Nearhood in the early morning of November 7, 2009, when they responded to a 9-1-1 call. They found a visibly intoxicated K.L. K.L.'s face was covered in blood and she had clearly suffered trauma to the areas around her eyes. A medic transported her to a local hospital.

{¶ 3} A member of the Columbus Division of Police had encountered K.L. and Nearhood at Nearhood's residence earlier in the morning. K.L. had been knocking on Nearhood's door, which led Nearhood to call police, claiming that unknown people were knocking on his door. At that time, K.L. was intoxicated but not visibly injured. Nearhood had initially not wanted to let K.L. in. Eventually, Nearhood relented and did let K.L. in. Police then left the area until the later 9-1-1 call.

{¶ 4} The issue at trial was how K.L. got injured between her first encounter with police and her second encounter with police. K.L. did not testify at the trial, so the state of Ohio relied upon other evidence to support their allegation that Nearhood knowingly caused physical harm to K.L., specifically including a serious injury near her eyes.

{¶ 5} K.L. had told the medic who responded to treat her that "he" had punched her repeatedly in the face. One of her eyes was swollen to the point that the eyeball was barely visible.

{¶ 6} K.L. and Nearhood talked repeatedly while K.L. was in custody awaiting trial on her own charges. Some of the conversations were over the telephone and were recorded. In the conversations, Nearhood admitted hitting K.L. while she was "down on the ground." He told her that her worst injuries were a result of her walking into a room divider and falling into a table. K.L. neither agreed nor disagreed with Nearhood's assertions in the phone conversations.

{¶ 7} K.L. told a municipal court judge that she was partly at fault for what occurred, but that she did not deserve "to get beat up."

{¶ 8} K.L. also executed affidavits to help in Nearhood's defense, in which she claimed that she had lied when she earlier claimed that Nearhood had assaulted her. She also claimed that Nearhood had acted in self-defense and that she had fallen, leading to most of her injuries.

{¶ 9} In weighing the evidence, especially the affidavits, the jury could well have found that K.L., who claimed to love Nearhood, was stating under oath that which would help him at trial, not what had actually occurred. Nearhood had told her on the telephone what he wanted her to say, and she had subsequently sworn to it.

{¶ 10} Statements made by K.L. to police and the paramedic indicated that Nearhood punched her in the face repeatedly. Her visible injuries were consistent with her story. The jury was free to believe what she had said originally, as opposed to K.L.'s subsequent claims. The verdicts were not against the manifest weight of the evidence.

{¶ 11} The fifth assignment of error is overruled.

{¶ 12} In the third and fourth assignments of error, counsel for Nearhood attacks the admissibility at trial of the statements initially made by K.L. about how she received her injuries.

{¶ 13} The trial court properly admitted the statements. Evid.R. 803(4) reads:

**Statements for purposes of medical diagnosis or treatment.**

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

{¶ 14} The paramedic who treated K.L. was concerned that something other than fists had been used to harm K.L. K.L.'s eye was swollen to the point that he could not tell whether her pupil was fixed and dilated. The possibility of a serious concussion was increased if some other instrument, such as a baseball bat, had been used on K.L.'s head. The medic had every right to inquire about how K.L. had suffered her injuries. That medical history was admissible at Nearhood's trial.

{¶ 15} Use of a medical history under such circumstances is not a violation of the constitutional right of confrontation. The relatively recent case of *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, has clarified that statements that are made out of court and that are testimonial in nature can result in a violation of the constitutional right to confront the witnesses against a criminal defendant at trial. However, statements made in an ongoing emergency are admissible. See *Davis v. Washington* (2006), 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224. K.L.'s medical condition was an ongoing medical emergency. See also *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, and *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944.

{¶ 16} The third and fourth assignments of error are overruled.

{¶ 17} In the second assignment of error, appellate counsel argues on behalf of Nearhood that a letter Nearhood wrote and gave to his parole officer should not have been admitted into evidence. The note could not have prejudiced Nearhood because it tracked the defense that Nearhood wished to present,

namely that Nearhood had acted in self-defense. The note also tracked the version of events that K.L. included in her affidavit. The evidence taken as a whole did not allow defense counsel to argue with any hope of being believed that Nearhood had nothing to do with K.L.'s injuries, that K.L. had fallen repeatedly during the time interval between her two encounters with police, and that Nearhood was merely an innocent bystander. The letter to Nearhood's parole officer was not harmful to him, but was not believable to the jury. Because the admission of the letter Nearhood drafted in advance of his meeting with his parole officer and gave to his parole officer at the meeting was not prejudicial, we do not have to otherwise determine whether the statement/letter was voluntary. However, Nearhood was not in custody when he met with his parole officer, so *Miranda* warnings were not required. He drafted the letter at a time when he was not in the presence of any law-enforcement personnel, so he was not pressured by such personnel at that time. He had an understandable desire to explain to his parole officer how his friend/girlfriend sustained serious trauma to her face, but that desire did not equal compulsion by law-enforcement personnel to give an incriminatory statement.

{¶ 18} The second assignment of error is overruled.

{¶ 19} The first assignment of error presents a challenging problem for trial courts. Hearing-impaired jurors should not be prevented from jury service when their impairment will not harm their ability to fully participate in the trial process.

{¶ 20} Obviously, an important part of the trial process is the jury deliberations, and court rules currently do not allow nonjurors to be present in the jury room during deliberations. Perhaps the rules need to be amended to expressly allow translators to be present during deliberation, under strict prohibition against doing anything but translate. Prior case law shows overturned verdicts when even alternate jurors have been present during deliberations. Whether nonjurors can be present is at best a gray area of the law that should be clarified.

{¶ 21} Further, in Nearhood's case, the emotional inflections of the voices on the recorded telephone conversations between K.L. and Nearhood could be considered important in evaluating the evidentiary value of the conversations. One interpretation of the calls is to view Nearhood as domineering and K.L. as needy and dependent, eager to do whatever pleased her boyfriend. This view could help a jury understand why K.L. began swearing that she was, to a greater or lesser degree, responsible for her own injuries. A hearing-impaired juror could face significant challenges in picking up these nuances in the tapes of the telephone calls. The trial-court judge could justifiably be concerned about this problem.

{¶ 22} The Supreme Court of Ohio has provided some guidance for appellate and trial courts on this issue in *State v. Speer*, 124 Ohio St.3d 564, 2010-Ohio-649, 925 N.E.2d 584. The syllabus reads:

1. In deciding a challenge for cause to a prospective juror on the basis of a physical impairment, the court must determine, in light of the specific evidence to be presented, whether any reasonable and effective accommodation can be made to enable the juror to serve. In making that determination, the court must balance the public interest in equal access to jury service against the right of the accused to a fair trial, the latter being the predominant concern of the court.

2. The right to a fair trial requires that all members of the jury have the ability to understand all of the evidence presented, to evaluate that evidence in a rational manner, to communicate effectively with other jurors during deliberations, and to comprehend the applicable legal principles as instructed by the court. An accommodation made to enable a physically impaired individual to serve as a juror must afford the accused a fair trial.

3. A hearing impairment by itself does not render a prospective juror incompetent to serve on a jury, but when the accommodation afforded by the court fails to enable the juror to perceive and evaluate the evidence, the accused is deprived of a fair trial. To avoid such situations, a trial court must determine whether reasonable accommodations will enable an impaired juror to perceive and evaluate all relevant and material evidence, and when no such accommodation exists, the court must excuse the juror for cause.

{¶ 23} In *Speer*, the issue was the ability of a hearing-impaired juror to evaluate the evidentiary value of an audio recording that included a criminal defendant's voice. The Supreme Court of Ohio upheld the decision of the trial court to exclude a hearing-impaired juror from service under these facts. We cannot ascertain a significant difference in the facts of Nearhood's case and the facts in *Speer*.

{¶ 24} The trial judge was within her discretion to excuse the hearing-impaired juror.

{¶ 25} The first assignment of error is overruled.

{¶ 26} All five assignments of error having been overruled, the judgment of the Franklin County Municipal Court is affirmed.

Judgment affirmed.

KLATT and CONNOR, JJ., concur.